LINDO (GORDON v.). See Cases Nos. 5,-231 and 5,616.

LINDO (SKYREN v.). See Case No. 12,931.

LINDO (SNOWDON v.). See Case No. 13,-152.

LINDO (WELSH v.). See Cases Nos. 17,408 and 17,409.

---

## Case No. 8,365.

### LINDROP v. DALL.[1]

District Court, D. California. Oct. 5, 1868.

SHIPPING—MASTER — PUNISHMENT OF OFFENDERS —LIABILITY FOR PUNISHMENT WITHOUT INVESTIGATION.

[1. It is not a cruel or excessive punishment to keep two waiters ironed together for 10 hours for fighting in the cabin of a vessel.]

[2. A master who without investigating the circumstances unjustly causes a seaman to be punished for an offense he did not commit is liable though he did not act in a cruel or oppressive spirit.]

[This was a libel in personam by John Lindrop, a waiter on board the steamer Sierra Nevada, against the master, C. C. Dall, to recover for personal injuries.]

Thompson & Wilson, for libelant.

H. & C. McAllisters, for respondent.

HOFFMAN, District Judge. I do not perceive that the mode of punishment adopted by the master was either cruel in its nature or excessive in its degree, if the libellant had committed the offence for which he was punished. The master supposed that he had been fighting in the cabin with another waiter. He therefore caused the two to be ironed together, and kept them in that condition some nine or ten hours. It was demonstrated by actual experiment in court that persons confined in this way could sit down, and that their situation, though certainly uncomfortable, did not occasion any torture or severe suffering. Had the master taken any measures to investigate the truth of the charges against the libellant, and, after due inquiry, acted on the best information he could obtain, his justification would have been complete, even though he might have been mistaken as to the facts. But in this case he seems to have assumed that the libellant was in fault, and even that

1 [Not previously reported.]

he was drunk. I think it clear from the proofs that the libellant was not in fault, and that he was not drunk on the occasion referred to, or any time during the voyage. On the contrary, he seems to be a man of entirely sober habits. I think, therefore, that the master acted hastily and without due regard for the feelings and rights of the libellant.

I cannot believe that the subsequent ill-health of the libellant was due to the punishment he received. Undoubtedly the abrasion on his wrists was caused by the irons. But this would have been but a temporary inconvenience if he had been willing to submit to treatment. The irons are said to have been rusty, but they appear to have been new, and were probably as free from rust as exposure to the moist air of the ocean could allow.

The feelings of the libellant, who seems to be a very respectable young man, have evidently been deeply wounded by the injuries as well as harshness of the treatment he received, and as it was wholly undeserved, I think he is entitled to damages. I do not attribute to the master any cruel or oppressive spirit or any desire to abuse his authority. Had the facts been as he supposed, he would have been justified in his treatment of the men. But he is to blame for not taking pains to investigate the circumstances. There was no emergency that called for instant action, and the second steward and several others could have informed him how the dispute between the men arose and who was to blame. His statement on the stand that the libellant was drunk when he came to his room, shows a hastiness in forming conclusions and an incautiousness not to use a stronger word, of statement which cannot be justified. The rightful authority of the master, to punish seamen when necessary to maintain discipline and enforce obedience, will at all times be sustained by the court. But this authority he must exercise with circumspection, and after due inquiry into the facts so that no injustice be done. Had the master made such inquiry in this he would have learned that the libellant did not deserve punishment. I shall decree $100 damages to libellant.